IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ISIAIN JOHNSONMARIN,<br><br>Defendant.<br>_____ / | No. CR 11-00063 WHA<br><br>**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS** |

**INTRODUCTION**

Defendant moves to suppress the fruits of the search of his car, in which SFPD Officers Sean Griffin and Damon Jackson found a Beretta .40 caliber handgun — possession of which defendant is now charged under 18 U.S.C. 922(g). Because the search of defendant's person and the subsequent search of defendant's car were both lawful searches incident to arrest, defendant's motion is **DENIED**.

**STATEMENT**

After an evidentiary hearing, the Court finds as follows: On January 26, 2011, defendant Isiain Johnsonmarin met up with two other individuals named Kevin Lewis and Anthony Galosi near the corner of Grove and Buchanan Streets in the Western Addition neighborhood of San Francisco. Defendant had a music label and promoted his own rap music via that label. The two other individuals were his friends and also worked with defendant on his music business. Based on their conversation, defendant decided to go to his car, which was nearby. Defendant drove a

blue four-door Honda Civic, which was owned by defendant's father, but which defendant had permission from his father to drive and which permission was given on January 26.

Meanwhile, two San Francisco Police Department officers named Sean Griffin and Damon Jackson were on patrol in an unmarked police vehicle. Officer Griffin was driving west on Grove Street, and Officer Jackson was in the passenger seat. Officers Griffin and Jackson were on the SFPD gang task force and were also cross-designated as federal officers. They had both been SFPD officers for over ten years and had been partners assigned to the Western Addition for several years, and thus were very familiar with the area and its residents. In this way, the officers knew defendant and had known him for years prior to the incident in question. The officers knew about defendant's music label and that he promoted his own music.

The officers saw defendant walking west on Grove Street toward his car. Mr. Lewis saw the officers as they drove past and said, "There are the narcs." Even though defendant's back was to the officers, who were driving toward defendant as he walked in the same direction (west), the officers recognized defendant from the back. As the officers approached, they observed defendant put something into the back pocket of his jeans. Officer Griffin pulled the unmarked police car over, so that it was parallel to but slightly behind defendant's blue Honda. The officers knew it was defendant's car because they had seen him in the car on prior occasions. The car was parked on Grove Street on the north side of the street just west of the Buchanan intersection.

Officer Griffin approached and made contact with defendant on the sidewalk. Officer Griffin and defendant were standing right next to the passenger side of the Honda (Tr. 11–12, 78–79; Second Tr. 29–30).[1] As Officer Griffin approached defendant he smelled marijuana, at approximately two feet away from defendant (Tr. 12–13). Officer Griffin said, "It smells like weed over here." Defendant responded, "I'm just going to smoke." Officer Griffin asked defendant if he had a medical marijuana card, and defendant answered "no." Officer Griffin then

---

[1] This order recognizes that Kevin Lewis testified that Officer Griffin and defendant were two to three cars away from the Honda, as opposed to right next to the Honda (Second Tr. 45–46). Nevertheless, this order finds that Officer Griffin made contact with defendant right next to his car. Both officers testified that this occurred, and they were standing right there, as opposed to Mr. Lewis, who was down the street, east of the Buchanan intersection on Grove Street.

2

said, "You're under arrest," and searched defendant's person (Tr. 13 ("At that time I told him he was under arrest"), 48 ("I smelled marijuana. I asked him a question. He told me what he told me, and I arrested him."), 87–88).[2]

As a result of Officer Griffin's search of defendant's person, he found a small plastic baggie containing marijuana in his left rear pants pocket (which marijuana was later determined to be 5.94 grams in net weight), a cell phone, and 984 dollars in the following denominations: one fifty-dollar bill, 46 twenty-dollar bills, one ten-dollar bill, and four one-dollar bills (Exhs. E–F). Officer Griffin kept the baggie of marijuana but did not take the money or cell phone from defendant at that time. Officer Griffin again told defendant that he was under arrest and sat him down on the curb. Officer Jackson stood near defendant while defendant sat on the curb.

Then Officer Griffin proceeded to defendant's car to do "an evidence search." Interestingly, the car was running and there was a young woman in the passenger seat of the car but no one in the driver's seat (Tr. 21, 91–92; Second Tr. 19, 28).[3] Officer Griffin spoke to the young woman and she exited the vehicle. Officer Griffin then searched the car, beginning with the front of the car on the driver's side, and proceeding into the interior of the car. When Officer Griffin searched the car he was looking for: "Any additional marijuana, any additional packaging for marijuana. They like to use scales to weigh marijuana" (Tr. 19).

---

[2] Neither Officer Jackson — who had hung back after exiting the police vehicle and remained approximately five to ten feet away — nor defendant's friend, Kevin Lewis, smelled marijuana or heard the conversation between Officer Griffin and defendant (Second Tr. 6–8, 13–17, 33–34, 42–43, 51). Defense counsel challenges the credibility of Officer Griffin and argues that he has fabricated these events. It is not enough to assert that a police officer testifying under oath is lying — it has to be proven.

This order finds that Officer Griffin smelled marijuana as he approached defendant. Officer Griffin knew the smell of marijuana and he was two feet away from defendant. Officer Griffin was the only one in the immediate vicinity of defendant when he approached defendant.

This order also finds that between their brief exchange and Officer Griffin's search of defendant's person, Officer Griffin said, "You're under arrest." Again, Officer Jackson and Mr. Lewis did not hear the conversation between Officer Griffin and defendant, so their lack of memory is not probative to contradict Officer Griffin's otherwise persuasive testimony.

[3] Kevin Lewis testified that the car was not running, but soon thereafter revealed that such testimony was speculation based on the high price of gas (Second Tr. 50, 53).

During Officer Griffin's search, Officer Jackson deviated from his position standing near defendant in order to help his partner and opened the trunk of the car to aid in the search. Officer Griffin told Officer Jackson, however, to go back and stand with defendant who was sitting on the curb, which Officer Jackson then did. A thorough search of the trunk of the car was only conducted later.

After Officer Griffin had searched much of the car's interior, he returned to the front of the car, where he unhinged the glove compartment, behind which he then found a Beretta .40 caliber handgun. Defendant was then handcuffed and placed in the back of the unmarked police car, and Officer Griffin radioed police dispatch at 3:29 p.m. Officer Griffin said, "On view 221, arrest Grove and Buchanan. Could I have a 407?" which number codes meant "gun" and "prisoner transport." The officers returned to the sidewalk, where they spoke to defendant's friends, Mr. Lewis and Mr. Galosi, who had approached. When Officer Griffin returned to the police car, he found defendant talking into his cell phone with his hands still in handcuffs, and defendant was crying.

Soon, a police transport arrived, and defendant was taken to SFPD's Northern Station. Because (i) there was more investigation to do involving defendant's car, (ii) the officers are trained to expedite their work at the scene of a crime when possible, and (iii) it was a dangerous area, Officer Jackson drove defendant's car to the parking lot at Northern Station, while Officer Griffin drove the police car and met his partner there. (Officer Jackson was able to drive the Honda because the keys had been in the ignition during the whole incident.) After a further search, the officers did not find scales or baggies or pay-owe sheets or any other indicia of drug sales. In the trunk of the car, they found posters and CDs and other items related to defendant's music business, which defendant's friends came to pick up later from Northern Station.

Defendant was charged with being a felon in possession of a firearm in violation of federal law. He moves to suppress the fruits of the search of his car based on arguments that (i) the search of defendant's person was illegal so the fruits of such search and the subsequent vehicle search must be suppressed, and (ii) the search of the vehicle was not based on probable cause or other permissible grounds so the fruits of such search must be suppressed. An

evidentiary hearing was held in two sessions on June 3 and 8, and the parties submitted post-hearing briefing.

## ANALYSIS

Based on the foregoing findings of fact, this order holds that Officer Griffin lawfully arrested defendant based on probable cause, lawfully searched his person as a search incident to arrest, and lawfully searched his vehicle as a search incident to arrest.

Warrantless searches, as we have here, "are *per se* unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions. Among the exceptions to the warrant requirement is a search incident to a lawful arrest. The exception derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations." *Arizona v. Gant*, 129 S.Ct. 1710, 1716 (2009) (citations omitted). The government has the burden to prove any exception to the Fourth Amendment warrant requirement by a preponderance of evidence. *United States v. Vasey*, 834 F.2d 782, 785 (9th Cir. 1987). Probable cause exists if there is a fair probability that contraband or evidence of a crime will be found in a particular place based on the totality of the circumstances. *United States v. Pinela-Hernandez*, 262 F.3d 974, 978 (9th Cir. 2001).

**A.   SEARCH OF DEFENDANT'S PERSON WAS A LAWFUL SEARCH INCIDENT TO ARREST**

Based on the findings of fact reviewed above, this order holds as a matter of law that Officer Griffin's search of defendant's person was a lawful search incident to arrest.

**1.   There Was Probable Cause**

Initially, defendant argues that the search of his person was an illegal warrantless search because Officer Griffin did not have probable cause to believe that defendant was committing a crime — namely, possession of marijuana. "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001); *see also Virginia v. Moore*, 553 U.S. 164, 171 (2008). Defendant cites and agrees with this same legal standard (Dkt. No. 48 at 1–2).

5

Officer Griffin had probable cause to believe that defendant was committing the offense of possession of marijuana. As found above, Officer Griffin smelled marijuana as he approached defendant. Moreover, when Officer Griffin said, "It smells like weed over here," defendant responded, "I'm just going to smoke." Defendant thus *acknowledged* that he smelled like marijuana before Officer Griffin arrested defendant. A reasonable officer in Officer Griffin's position would have had probable cause to believe based on these facts that defendant was in possession of marijuana. The smell combined with defendant's confirmation provided Officer Griffin with probable cause to arrest defendant for possession of marijuana.[4]

### 2.     There Was an Arrest

Next, Officer Griffin arrested defendant. Generally, "[t]he standard for determining whether a person is under arrest . . . depends upon the objective circumstances of the situation, [and asks] whether 'a reasonable innocent person in such circumstances would conclude that after brief questioning he or she would not be free to leave.'" *United States v. Bravo*, 295 F.3d 1002, 1009 (9th Cir. 2002) (citations, italics, and footnote omitted). The Supreme Court has set out a particular analysis for "custodial arrests" in the context of citable offenses, as we have here. Where there is probable cause to believe that a particular individual has committed a citable offense, an officer may legally conduct a "custodial arrest" of that individual, including where there is a reasonably perceived need for an arrest of that individual, for example to facilitate needed additional investigation. *Atwater v. City of Lago Vista*, 532 U.S. 318, 351 (2001) (approving this rule for custodial arrests in part because otherwise "[a]n officer not quite sure that the drugs weighed enough to warrant jail time . . . would not arrest, even though it could perfectly well turn out that, in fact, the offense called for incarceration"). None of the decisions cited by defendant (*see* Dkt. No. 51 at 6–7), addresses the situation of a custodial arrest as we have here

---

[4] The fact that possession of the amount of marijuana that was at issue in this case is only a citable offense under state law does not change the fact that Officer Griffin could properly arrest him under the circumstances, and it does not change the Fourth Amendment analysis. Defendant agrees with this. Defendant concedes that even if the officers had violated state law in arresting defendant for a citable offense — a question about which this order expresses no opinion — that does not impact our Fourth Amendment inquiry. In addition, as Officers Griffin and Jackson are cross-designated as federal officers, regardless of state law they had authority to arrest defendant for violation of *federal law*, namely 21 U.S.C. 844.

6

1  subsequent to and thus applying the principles set forth in *Atwater*. *See also Moore*, 553 U.S. at
2  176.
3        As this order found above, once Officer Griffin had probable cause to arrest defendant, he
4  said "You're under arrest," before proceeding to search defendant's person. Given the preceding
5  exchange between Officer Griffin and defendant, the circumstances demonstrate that he
6  conducted a custodial arrest for possession of marijuana, in part in order to facilitate his further
7  investigation, which *Atwater* and *Moore* specifically approve. Having been advised that
8  defendant was under arrest and knowing the basis for the arrest, a reasonable innocent person in
9  such circumstances would have concluded that he was under custodial arrest, which may have
10 resulted in a citation or instead in regular booking. For these reasons, this order finds that
11 defendant was arrested by Officer Griffin before his person was searched.[5]

        **3.    Search of Person Was Incident to Arrest**

13       Police officers may search an arrestee's person subsequent to a lawful arrest of that
14 individual. *See United States v. Robinson*, 414 U.S. 218, 235 (1973). As there was probable
15 cause to arrest defendant before the search of his person, and as defendant *was* actually arrested
16 before the search of his person, the search of his person was a lawful search incident to arrest.
17 Therefore, the officer's discovery of the 5.94 grams of marijuana in a baggie and $984 in cash
18 was pursuant to a lawful search incident to a valid arrest.

        **B.    SEARCH OF DEFENDANT'S VEHICLE WAS A LAWFUL SEARCH INCIDENT TO ARREST**

20       A recent decision by the Supreme Court has clarified the standard for the validity of a
21 warrantless search of a vehicle as a search incident to an arrest. *Arizona v. Gant*, 129 S.Ct. 1710,
22 1719 (2009), held the following:

---

[5] In addition, because there was probable cause to make an arrest, and the search was conducted roughly contemporaneously with the arrest, "the search-incident-to-arrest doctrine applies and no warrant is required." *United States v. Smith*, 389 F.3d 944 (9th Cir. 2004) (holding that a search incident to lawful arrest may occur before or after arrest so long as arrest occurs roughly contemporaneously with search). Defendant argues that this doctrine cannot apply because there was not probable cause to arrest prior to Officer Griffin's search of defendant's person (Dkt. No. 55 at 4). Not so. As found above, Officer Griffin had probable cause to arrest defendant independent of and prior *to* his search of defendant's person.

7

> [P]olice [are authorized] to search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search.
>
> . . . [W]e also conclude that circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is "reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." *Thornton*, 541 U.S., at 632, 124 S.Ct. 2127 (SCALIA, J., concurring in judgment).

As this holding indicates, and as subsequently applied by our court of appeals (and others), *Gant* provided two independent standards for finding a warrantless search of a vehicle to be a valid search incident to arrest.

### 1. Recent Occupancy

A search of a vehicle incident to arrest can occur even when a defendant is first encountered outside of the vehicle later searched. The *Thornton* decision — from which the language of Justice Scalia's concurrence is adopted in *Gant* — involved a search of a vehicle subsequent to the officer encountering defendant outside of his vehicle, and held that "[s]o long as an arrestee is [a] 'recent occupant' of a vehicle . . . officers may search that vehicle incident to the arrest." *Thornton v. United States*, 541 U.S. 615, 623–24 (2004). This order must consider defendant's "temporal or spatial relationship to the car at the time of the arrest and search." *Id.* at 622.[6]

Based on the factual findings made above, this order holds that defendant was a "recent occupant" of his vehicle. Officers Griffin and Jackson made contact with defendant next to the Honda. The vehicle was close enough that the spatial relationship between the vehicle and defendant indicated his recent occupancy. In addition, the car was running and there was a young woman in the passenger seat of the car but no one in the driver's seat. Importantly, the officers knew that defendant was on his way to his car — as they approached they saw him walking toward the blue Honda that they knew was his. Defendant's temporal relationship to his vehicle is not clear in the record and was unknown to the officers. Nevertheless, the foregoing facts

---

[6] Defendant argues that the law precludes the search of a vehicle incident to arrest "when the arrestee has not at least been seen getting into or out of the car" (Dkt. No. 55 at 3). Not so. "[Recent occupancy] certainly does not turn on whether [defendant] was inside or outside the car at the moment that the officer first initiated contact with him." *Thornton*, 541 U.S. at 622.

8

demonstrate that defendant may be considered a "recent occupant" at the time of his arrest such that the search of the vehicle was sufficiently proximate to the arrest under the principles just stated.

### 2. Search Was Lawful Under *Gant* Standard

Finally, this order holds that the vehicle search conducted by Officer Griffin was a lawful search incident to arrest because it was reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle — and thus the second *Gant* standard is met. The crime of arrest was a drug offense, as described above. Again, when Officer Griffin searched defendant's person, he found 5.94 grams of marijuana in a baggie and 984 dollars. Officer Griffin testified that he believed he would find evidence of drug sales in defendant's Honda. Evidence of drug sales would have been evidence relevant to the crime of arrest, which was drug possession. This order finds Officer Griffin's belief was reasonable — Officer Griffin might have found scales, baggies, pay-owe sheets, or other evidence relevant to defendant's drug possession in his vehicle. As provided in *Gant*, where the offense of arrest is a drug offense, "the offense of arrest will supply a basis for searching the passenger compartment of an arrestee's vehicle and any containers therein." *Gant*, 129 S.Ct. at 1719.

Because this order finds that the vehicle search conducted by Officer Griffin was a valid search because it was reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle, it need not consider whether it was lawful under the other *Gant* standard because defendant was unsecured and within reaching distance of the passenger compartment at the time of the search. For the same reason, this order need not consider whether it was a lawful search based on probable cause. *See Gant*, 129 S.Ct. at 1721 ("If there is probable cause to believe a vehicle contains evidence of criminal activity, *United States v. Ross*, 456 U.S. 798, 820-821, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), authorizes a search of any area of the vehicle in which the evidence might be found.").[7]

---

[7] Neither shall this order address the government's inevitable discovery argument, which was only raised in post-evidentiary hearing briefing — and not in response to the questions of the judge at the hearing or based on unanticipated evidence — and was thus untimely.

9

**CONCLUSION**

Based on the foregoing, the challenged searches that occurred in our case on January 26, 2011, were lawful warrantless searches, and defendant's motion to suppress is **DENIED**. This order sets a status conference for **JULY 26, 2011, AT 2:00 P.M.**

**IT IS SO ORDERED.**

Dated: July 20, 2011.



WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE